1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                               DISTRICT OF NEVADA

8                                     * * * * *

9    HEATHER MATTSON AND ROMAN
     BORISOV,
10                                                    3:15-cv-00182-LRH-WGC
              Plaintiffs,
11                                                    ORDER
12            v.
13   JEH JOHNSON, et al.,
14            Defendants.

15          Before the court is Plaintiffs' Motion for Rule 11 Sanctions. ECF No. 46. Defendants

16   have filed a response (ECF No. 50), to which Plaintiffs replied (ECF No. 51).

17   **I.     Background**

18          This case is a review under the Administrative Procedure Act ("APA") of a Board of

19   Immigration Appeals ("BIA") decision, which affirmed a decision by U.S. Citizenship and

20   Immigration Services ("USCIS"), a division of the Department of Homeland Security ("DHS").

21   The plaintiffs in this action are Roman Borisov, a Russian citizen living in the United States, and

22   his current wife, Heather Mattson, a U.S. citizen who filed an I-130 petition with USCIS seeking

23   to adjust Borisov's immigration status to become a lawful permanent resident.

24          USCIS originally approved Mattson's petition in 2012 but then issued a Notice of Intent

25   Revoke ("NOIR") its approval. USCIS alleged that Borisov had previously admitted to entering

26   "into a fraudulent marriage with Georgia Bufalino for the sole purpose of obtaining permanent

27   resident status in the United States" and was thus "prohibited from having a subsequent [I-130

28   ///

petition filed on his behalf . . . ." AAR[1] at 7. In July of 2013, USCIS issued a formal decision revoking its approval of Mattson's petition. AAR at 48–52. Plaintiffs appealed to the BIA, which found that the record contained "substantial and probative" evidence that Borisov's marriage was fraudulent and therefore affirmed the USCIS revocation. AAR at 8–13. Plaintiffs then filed suit against Jeh Johnson, the then-DHS secretary, and other federal officers, seeking review under the APA of the revocation decision.

The allegation of marital fraud stems from a 2005 interview of Borisov by DHS[2] Agent Peter Lazaro.[3] According to the report that Agent Lazaro filed, "Borisov admitted the marriage between himself and his [U.S. Citizen] spouse Bufalino is fraudulent. Borisov admitted the marriage was arranged solely for Bufalino to help him get his immigration status in the United States." AAR at 5. Borisov has consistently maintained that he made comments about the state of his marriage to Agent Lazaro but that he never stated that he married Bufalino for immigration benefits. Nonetheless, Borisov withdrew his application to adjust his status.

As mentioned above, Borisov again attempted to adjust his status years later following his new marriage to Mattson. When USCIS issued the NOIR and later its final decision revoking Borisov's petition, it cited Borisov's purported admissions to Agent Lazaro. AAR at 7, 50. In these documents, USCIS also revealed that immigration agents also contacted Bufalino, "who

///

///

---

[1] This citation refers to the "Amended Administrative Record" that the parties manually filed with the court. ECF No. 42.

[2] It is not clear whether Agent Lazaro is an agent with USCIS or with Immigration and Customs Enforcement ("ICE"). This issue is addressed below.

[3] Although not stated in Agent Lazaro's report, it appears he interviewed Borisov with at least one other agent present. Borisov has asserted that the other agent was Carol Lazaro, Peter Lazaro's partner agent and wife. ECF No. 46 at 11. As Defendants assert, "Plaintiffs provide no record cite for that assertion and there is nothing in the administrative record to support it." ECF No. 50 at 12. However, the only relevance to this point is that multiple agents were present during the interview, which comports with USCIS's summary of the interaction. *See, e.g.*, *infra* n. 4.

advised them that she had filed for an annulment of her marriage" to Borisov and stated that he "married her to acquire citizenship."[4] *Id.*

In response to the NOIR, Borisov requested photocopies of all documents and evidence that USCIS relied upon in reaching its decision. AAR at 100. USCIS responded by sending Borisov a redacted-copy of Agent Lazaro's report. AAR at 2–5. The visible portion references the interaction between the agent and Borisov but makes no mention of the subsequent contact with Bufalino.

On appeal, Borisov argued that the BIA could not rely on Bufalino's purported statements because they were never provided to Borisov.[5] AAR at 196. The BIA rejected this argument, stating that Bufalino's statements were in the record and would therefore be considered. AAR at 12. The BIA also revealed that USCIS's reference to Bufalino's allegations of martial fraud stemmed from a handwritten statement she provided, which was part of the record before the BIA.[6] AAR at 11–12. Borisov asserts that this was the first time he had learned of the handwritten statement. ECF No. 44 at 11. After Plaintiffs initiated the instant action months later, Defendants provided them a copy of this handwritten statement.

---

[4] The NOIR and final USCIS decision do not name the agents it cites, merely stating that "Immigration Agents" interviewed Borisov in 2005. AAR at 7, 50. Based on Agent Lazaro's report, it is known that he and his partner were the agents cited in the USCIS documents. Immediately after discussing the interview with Borisov, the documents state that "[t]he Agents contacted Georgia Bufalino," thus implying that Agent Lazaro and his partner were also the agents who obtained her statements. AAR at 7, 50. As discussed below, this is a point of contention.

[5] In other words, Borisov became aware of Bufalino's allegations of martial fraud from the NOIR and final revocation decision, but he was not provided any documentation evidencing Bufalino's interview with immigration agents. Because the only reference at this point to Bufalino's statements were the USCIS documents (AAR 7, 50), Borisov assumed that any reference to the subsequent interview with her were in the redacted portion of Agent Lazaro's report. AAR at 196.

[6] USCIS's response brief before the BIA discusses Bufalino's statements to immigration agents but does not reference her handwritten statement. AAR at 39–44. It is therefore unclear to the court how this handwritten statement became part of the BIA's record. While this issue is not pertinent to the instant motion, **the parties should clarify it in their summary-judgment motions**.

Bufalino's statement is contained within an INS[7] "Work Sheet for Oral Report." In relevant part, it states, "I married Roman [Borisov] in November of 2003. Within a year it became apparent that he only married me to acquire citizenship and so I filed for an annulment at which time he threatened to tell INS that I knowingly was assisting him in fraud and that I would be arrested and [lose] custody of my daughter." ECF No. 51-1 at 2.

After receiving this statement, Plaintiffs moved to compel Defendants to supplement and correct the administrative record. ECF No. 24. Plaintiffs argued that the report and statement did not support USCIS's assertions in its revocation decision. *Id.* at 7. Specifically, they contended that, because the report is undated and does not include the name of the authoring agent, USCIS could not have determined—at least based on the report alone—that Agent Lazaro was the agent who contacted Bufalino or that this interview occurred subsequent to Lazaro's interview with Borisov. Plaintiffs therefore moved the court to order Defendants to produce all documents that USCIS relied upon regarding the factual assertions in its NOIR and revocation decision. *Id.*

In response, Defendants revealed that USCIS officers again contacted Bufalino in August of 2015 in order to clarify her original statement. ECF No. 32 at 2. According to a new sworn statement that Bufalino completed, she made her original statement in "2004ish" and submitted it in Las Vegas, Nevada. ECF No. 32-1 at 4. This new statement, however, does not reveal who Bufalino made her original statement to and does not reference Agent Lazaro. Nonetheless, she does repeat her allegation that Borisov married her for immigration purposes, stating "I was under the impression that we were embarking on a life together (with my daughter) to live a happy/typical marriage. Several months later into it[,] I was made aware that this was never his intention." *Id.* Bufalino provides no further elaboration.

Defendants also represented that "USCIS has no other documents in its possession related to statements by Ms. Bufalino" but stated that they "have no objection to supplement the administrative record" with her recent statement. ECF No. 32 at 2. However, Plaintiffs objected

---

[7]  The Immigration and Naturalization Service ("INS") was a Department of Justice division. Its functions were transferred to several agencies under the newly-formed Department of Homeland Security.

to including the document in the amended administrative record because it was not before USCIS at the time it issued its revocation. ECF No. 33 at 5. The court agreed and thus did not admit Bufalino's 2015 statement into the amended record.[8] ECF No. 37 at 4.

Both sides eventually moved for summary judgment on Plaintiffs' claims.[9] ECF Nos. 43–44. Plaintiffs also filed the instant motion, requesting that the court impose sanctions on Defendants under Federal Rule of Civil Procedure 11. Plaintiffs argue that Defendants' summary-judgment motion consists of "numerous factual misstatements . . . that Defendants know to be false and unsupported, or should know to be false and unsupported." ECF No. 46 at 1. Plaintiffs request that the court order Defendants to either withdraw their motion in its entirety or strike certain portions of it. *Id*. at 11.

## II.   Legal standard

"Rule 11 requires the imposition of sanctions when a motion is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Conn v. Borjorquez*, 967 F.2d 1418, 1420 (9th Cir. 1992) (citation omitted). A court may also impose sanctions if a filing is factually misleading. *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002). A "district court has wide discretion in determining what sanctions should be imposed for violation of the Rule . . . ." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986). However, Rule 11 sanctions are an extraordinary remedy to be exercised with extreme caution and warranted only in "rare and exceptional" cases. *Operating Eng'rs Pension Trust v. A–C, Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988).

## III.   Discussion

Plaintiffs have identified several separate factual assertions in Defendants' summary-judgment motion that they argue are misleading. The court will address each in turn.

///

---

[8]  Based on concessions that Defendants made, the record was amended regarding other issues, thus resulting in the Amended Administrative Record before the court.

[9]  The parties have stipulated to respond and reply to their cross motions for summary judgment only after the court has ruled on the instant motion. ECF No. 47.

A.      **Narrative of interactions between Bufalino and Agent Lazaro**

Plaintiffs first highlight the following factual assertion in Defendants' motion:

> The USCIS agents also contacted Bufalino, who told them Borisov married her to acquire United States citizenship. (AAR 3, 7, 50, 55, 91, 145-46). Bufalino further advised that she filed an annulment of her marriage to Borisov. (AAR 3, 7, 50, 55, 91, 145-46). Thereafter, she withdrew her I-130 petition. (AAR 3, 50, 55, 91, 153). Borisov and Bufalino subsequently divorced on December 16, 2005. (AAR 140-44).

ECF No. 46 at 4 (quoting ECF No. 43 at 3–4). Plaintiffs argue that, based on Defendants' response to their motion to compel, Defendants know that these assertions do not have evidentiary support. *Id*. Specifically, they argue that Bufalino's original statement would not "have allowed Defendants to determine how, when, or by whom [Bufalino] was contacted, or even whether she was contacted by immigration services at all." *Id*. Plaintiffs also contend that the second part of the exert is inaccurate, arguing that the record establishes that Bufalino withdrew her I-130 petition two-and-a-half years after she and Borisov divorced. *Id*. at 6.

Turning to the first assertion regarding Bufalino's interview by immigration agents, there is some merit to Plaintiffs' argument regarding the lack of information underlying Bufalino's original statement. While her 2015 statement anchors her original statement's timing around 2004, Defendants have not indicated a document *within the record* that can support the assertion that Bufalino spoke to immigration agents after those same agents interviewed Borisov.[10] Moreover, no document in the record appears to support the assertion that Agent Lazaro and his partner were the agents that interviewed Bufalino.[11]

---

[10]  Plaintiffs also contend that the record contradicts Defendants' timeline because Bufalino reported that she was originally interviewed in 2004, which precedes Agent Lazaro interviewing Borisov in 2005. ECF No. 46 at 6. This argument is without merit. Bufalino's precise representation of when she provided her original statement was "2004ish" (ECF No. 32-1 at 4), which indicates that she did not recall the precise year—an unsurprising fact considering she was re-interviewed over a decade later. In turn, there is no direct contradiction of Defendants' timeline—i.e., that Bufalino provided her original statement to immigration agents after Agent Lazaro interviewed Borisov in 2005.

[11]  While the USCIS NOIR and final revocation decision implied that Agent Lazaro interviewed both Borisov and Bufalino (*see supra* n. 4), USCIS later explicitly asserted this in its response brief before the BIA. AAR at 40. However, Defendants appear to have backed away from this point, arguing that their summary-judgment motion makes no reference to Agent Lazaro.

1    The court, however, does not interpret these issues as an attempt by Defendants to

2    mislead the court. The record does not contradict these specific assertions, and Plaintiffs have not

3    indicated their relevance. Rather, Plaintiffs are attempting to undermine the accuracy of the

4    narrative that USCIS and the BIA relied on, an argument appropriate for summary judgment, not

5    a motion for sanctions.

6        Moreover, there is no merit to Plaintiffs' argument that the record does not support the

7    basic assertion that immigration agents interviewed Bufalino and that she provided them her

8    original statement. Her statement is contained within an INS form, and there is no plausible

9    explanation for why this completed form would exist if Bufalino was not interviewed by

10   immigration agents.

11       Finally, Defendants acknowledge that they incorrectly asserted that Bufalino withdrew

12   her petition after her divorce from Bufalino. ECF No. 50 at 14 n. 8. They contend that this was

13   an "inadvertent error" and have offered to modify their motion. *Id*. Again, the court does not

14   view this issue as an attempt to mislead, especially considering that there appears to be no

15   relevance to this factual assertion. However, based on this issue and other issues identified

16   throughout this order, the court will deny both parties' current summary-judgment motions

17   without prejudice and grant them leave to re-file them.

18       **B.     Bufalino's purported corroborating admissions of marriage fraud**

19       Plaintiffs next challenge Defendants' continual assertion that Bufalino admitted to

20   marriage fraud. ECF No. 46 at 6. They argue that both her original statement and 2015 statement

21   demonstrate that she married Borisov in good faith and only later reached the opinion that he had

22   married her for immigration benefits:

23        "I married Roman [Borisov] in November 2003. Within a year it became

24        apparent that he only married me to acquire citizenship . . . ." ECF No. 51-1 at 2.

25

26

27   _____

28   ECF No. 50. While Plaintiffs refer to this argument as "insincere" based on Defendants' prior
     assertions (ECF No. 51 at 3 n. 1), it demonstrates that Defendants are refraining, at least on this
     point, from making factual assertions that the record does not support.

1    "I was under the impression that we were embarking on a life together (with my

2    daughter) to live a happy/typical marriage. Several months later into it[,] I was

3    made aware that this was never his intention." ECF No. 32-1 at 4.

4    Plaintiffs further argue that these statements are not, as Defendants have consistently portrayed,

5    an "admission" of marriage fraud by Bufalino, which would imply that she too entered the

6    marriage in bad faith by conspiring with Borisov to help him gain immigration benefits. Rather,

7    Plaintiffs contend that these statements are an accusation by Bufalino of Borisov's intentions.

8    They thus argue that Defendants have misled the court by consistently asserting that Borisov's

9    purported marriage-fraud admission, as reported by Agent Lazaro, and Bufalino's statements are

10   "corroborating admissions" of marriage fraud. ECF No. 46 at 7.

11        Defendants respond by continuing to frame Bufalino's statements as an "admission,"

12   arguing that her "admission that Borisov married her to acquire citizenship is an admission that

13   her marriage was 'fraudulent.'" ECF No. 50 at 13. They further contend that, "[w]hether her

14   admission also meets the technical definition of 'marriage fraud' is beside the point. After all, it

15   was Borisov—not Bufalino—who was accused of marriage fraud . . . ." *Id*.

16        The court finds that it is inaccurate to refer to Bufalino's statements as admissions of

17   marital fraud, as the term "admission," especially in the legal context, denotes that Bufalino

18   revealed her own wrongful actions—i.e., conspiring to commit marital fraud. *Admission*, *Black's*

19   *Law Dictionary* (10th ed. 2014) ("A statement in which someone admits that something is true or

20   that he or she has done something wrong . . . ."). As Plaintiffs correctly assert, her statements are

21   allegations or accusations that Borisov entered the marriage in order to gain immigration

22   benefits.

23        Nonetheless, the court does not find that Defendants intended to mislead or that Rule 11

24   sanctions are appropriate. But because the parties will be granted leave to re-file their summary-

25   judgment motions, the court cautions Defendants to apply more care in how they address the

26   record.

27   ///

28   ///

8

**C.      The evidentiary standard that USCIS applied**

In their summary-judgment motion, Defendants assert that

> Plaintiffs argue that the BIA and USCIS applied the wrong evidentiary standard in concluding that the evidence against Plaintiffs was "sufficient and probative" rather than "substantial and probative." (ECF No. 12 ¶ 36). The BIA and USCIS, however, plainly identified the correct standard – "substantial and probative" – in their respective decisions, thereby establishing that the agency was aware of – and applied – that standard. (AAR 10, 13, 54).

ECF No. 46 at 8 (quoting ECF No. 43 at 9). Plaintiffs argue that these assertions are factual misrepresentations because (1) "Plaintiffs never argued that the BIA applied the wrong 'sufficient and probative' standard" and (2) "Plaintiffs correctly pointed out that USCIS applied the wrong standard." *Id.*

In regards to the first point, Defendants acknowledge that Plaintiffs' operative complaint only alleges that DHS—through the decision that its division, USCIS, issued—cited an incorrect legal standard. ECF No. 50 at 5 (citing ECF No. 12 ¶ 36). However, Defendants highlight the fact that the complaint also states that "Plaintiffs request that this Court hold [*sic*] DHS's revocation decision, *and by extension the BIA's decision*, unlawful and sets [*sic*] it aside *for all the reasons stated above*." *Id.* (alternations and emphasis in quotation) (quoting ECF No. 12 ¶ 49). Defendants argue that, based on this assertion, they "reasonably concluded . . . that Plaintiffs also objected to the BIA decision as having concurred with the evidentiary standard applied by the USCIS order." *Id.* at 5–6.

Responding to Plaintiffs' second argument, Defendants counter that the USCIS revocation decision also states that "[a] revocation of an approved visa petition must be based on *substantial and probative evidence*." *Id.* at 6 (emphasis in quotation) (quoting AAR at 54). Defendants argue that the record therefore "demonstrates that the USCIS was aware of—and applied—the correct evidentiary standard." *Id.*

The court finds that Defendants' assertions are not misleading, that sanctions are therefore unwarranted, and that Plaintiffs' arguments on this point are more appropriate for arguing for or opposing summary judgment.

///

### D.   Admissibility of Agent Lazaro's report

Plaintiffs next argue that "Defendants misrepresent the record to the Court by falsely asserting that Plaintiffs' Amended Complaint argued against admissibility of Agent Lazaro's report" based on hearsay. ECF No. 46 at 9. Plaintiffs contend that their complaint "objects to DHS elevating Lazaro's 'unsworn report to the level of an irrebuttable presumption,' not to the report's admissibility." *Id.* (footnote omitted) (quoting ECF No. 12 ¶ 37). However, as Defendants correctly counter, Plaintiffs' complaint explicitly states that "Agent Lazaro's arrest report is hearsay within hearsay . . . ." ECF No. 12 ¶ 37. Moreover, Plaintiffs argued in their appeal to the BIA that Agent Lazaro's report was "unreliable hearsay." AAR at 190. Therefore, Defendants' interpretation of Plaintiffs' complaint is reasonable and sanctions are unwarranted.

### E.   Whether Plaintiffs were aware of Bufalino's original statements

In their summary-judgment motion, Defendants assert that "Plaintiffs were informed that Bufalino gave a statement to USCIS agents admitting that her marriage to Borisov was fraudulent." ECF No. 43 at 10. In support of this statement, Defendants cite to the NOIR, which discusses Bufalino reporting to immigration agents that "Borisov married her to acquire citizenship." *E.g.*, AAR at 7. Plaintiffs argue that Defendants are attempting to conceal the fact that they did not provide Plaintiffs a copy of Bufalino's original written statement. ECF No. 46 at 9. Plaintiffs argue that even the verbs used in the USCIS documents—"contacted", "advised," "stated"—reasonably led Plaintiffs to believe that Bufalino's statements were only given orally, thus masking the existence of her written statement. *Id.* at 10.

The court does not find that Defendants' assertion is misleading, as USCIS's NOIR and revocation decision did provide Plaintiffs notice that Bufalino made statements to immigration agents. The issue of whether Defendants have accurately portrayed what Bufalino actually communicated—i.e., whether she admitted to marital fraud or merely alleged fraud—has been addressed above. And the issue of whether Defendants violated federal law by not providing Plaintiffs a copy of Bufalino's handwritten statement during the administrative proceedings is a question appropriate only for the parties' summary-judgment motions. The court will therefore not impose sanctions based on this issue.

1

### F.    Misidentification of immigration agents as USCIS agents

2      Throughout their motion, Defendants refer to the immigration agents that interviewed

3   Borisov and Bufalino as USCIS agents. *E.g.*, ECF No. 43 at 1–2. However, Plaintiffs assert that

4   Peter Lazaro is an agent with ICE, not USCIS. ECF No. 46 at 10–11. Defendants do not clarify

5   which division of DHS Agent Lazaro served under at the time but argue that, based on the

6   record, they reasonably asserted that the immigration agents that interviewed Borisov and

7   Bufalino were USCIS agents. ECF No. 50 at 11–12.

8      Because Plaintiffs have failed to indicate any legal significance to which DHS division

9   Agent Lazaro worked for, it is implausible that Defendants were attempting to mislead the court.

10  Thus, even if Plaintiffs are correct that Agent Lazaro is an ICE agent, Defendants possible

11  mistake does not warrant sanctions.

12  ### IV.    Conclusion

13     IT IS THEREFORE ORDERED that Plaintiffs' Motion for Rule 11 Sanctions (ECF No.

14  46) is **DENIED**.

15     IT IS FURTHER ORDERED that Defendants' motion for summary judgment (ECF No.

16  43) AND Plaintiffs' motion for summary judgment (ECF No. 44) **are DENIED without**

17  **prejudice**.

18     IT IS FURTHER ORDERED that the parties may re-file their motions for summary

19  judgment within thirty days of the date of this order.

20     IT IS FURTHER ORDERED that, pursuant to the parties' stipulation (ECF No. 47), the

21  parties may file a response to the re-filed motions for summary judgment within thirty days of

22  each motion being re-filed and may then file a reply within thirty days of the responses.

23     IT IS SO ORDERED.

24

25     DATED this 10th day of February, 2017.

26                                                        _____
                                                         LARRY R. HICKS

27                                                       UNITED STATES DISTRICT JUDGE

28