UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| HEATHER MATTSON and ROMAN BORISOV,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN F. KELLY, AL GALLMANN, JEANNE KENT, JEFF SESSIONS, and DANIEL BOGDEN,<br><br>Defendants. | Case No. 3:15-cv-00182-LRH-WGC<br><br>ORDER |

Plaintiffs Heather Mattson and Roman Borisov seek review of a decision by the Board of Immigration Appeals ("BIA") under the Administrative Procedure Act ("APA"). ECF No. 12. Plaintiffs moved for summary judgment. ECF No. 64. Defendants John F. Kelly, Al Gallmann, Jeanne Kent, Jeff Sessions, and Daniel Bogden also moved for summary judgment. ECF No. 62.[1] The parties both filed responses and replies to the competing motions. *See* ECF Nos. 69, 68, 70, 71. After considering the Administrative Record and the parties' arguments, the court grants Defendants' motion and denies Plaintiffs' motion.

**I.    BACKGROUND**

Borisov came to the United States from Russia as a nonimmigrant student in July 2000. AR[2] at 55. He then married Georgia Bufalino, a United States citizen, in November 2003. AR at 156. Bufalino submitted an I-130 petition with the United States Citizenship and Immigration

---

[1] ECF No. 65 contains the corrected image for Defendants' motion for summary judgment. *See* ECF Nos. 62, 65.

[2] "AR" refers to the Administrative Record on file.

1

Services ("USCIS"), seeking to adjust Borisov's classification to immediate-relative status. AR at 153. Borisov simultaneously filed an I-485 application, seeking to adjust his status to lawful permanent resident. AR at 153. USCIS interviewed Bufalino and Borisov in January 2005 regarding the I-130 petition. AR at 3, 5. At the interview, Bufalino and Borisov presented utility statements as evidence of a bona fide marriage. *Id.* But Bufalino subsequently withdrew her I-130 petition. AR at 3, 50. She also filed an annulment petition but later withdrew that petition as well. AR at 145–46. The two were divorced in December 2005. AR at 140–44.

Borisov married Mattson, another United States citizen, in February 2012. AR at. 147. Like Bufalino, Mattson filed an I-130 petition to adjust Borisov's classification to immediate-relative status. AR at 131–32. Again, Borisov simultaneously filed an I-485 application. AR at 67. The USCIS granted Mattson's I-130 petition in November 2012. AR 86.

But the USCIS issued a Notice of Intent to Revoke ("NOIR") Mattson's approved I-130 petition in April 2013 based on Borisov previously entering into a marriage to evade immigration laws. AR at 6–7. Under the Immigration and Nationality Act § 204(c), an I-130 petition cannot be approved if an alien previously entered into a marriage for the purpose of evading immigration laws. AR at 6. In the NOIR, the USCIS explained two events formed its belief that Borisov entered into a fraudulent marriage in violation of 204(c). AR at 7. First, Borisov "admitted that he had entered into a fraudulent marriage with Georgia Bufalino for the sole purpose of obtaining permanent resident status in the United States" during a discussion with immigration agents in May 2005. *Id.* The alleged confession led to Borisov's arrest. *See id.* Second, Bufalino advised the immigration agents that she filed an annulment petition for her marriage to Borisov and stated that Borisov married her to acquire citizenship. *Id.* She also stated she withdrew her I-130 petition. *Id.* Plaintiffs were given thirty days to refute the USCIS's findings. *Id.*

Plaintiffs responded to the NOIR in May 2013. AR at 98. In the response, Borisov challenged the content of the May 2005 conversation he shared with the immigration agents. AR 109–10. He first stated he "had no reason to evade immigration laws at the time" based on his student visa. AR at 110. He then argued the alleged admission was taken out of context. *Id.*; AR

at 109–10. Specifically, Borisov stated he did not know immigration proceedings occurred prior to deportation; he instead believed immigration agents determined who could remain in the country. AR at 109. Accordingly, Borisov did not attempt to clarify that he married Bufalino in good faith "when [he] agreed with [the immigration agent] about the status of his marriage." *Id.* Borisov argued the admission failed to fully describe the nature of his relationship with Bufalino. AR at 110. He also stated that the immigration agent promised not to raise the issue of marriage fraud and that he and Bufalino were not interviewed in January 2005. AR at 99, 108. Plaintiffs requested "photocopies of any and all notes, memoranda, or other similar evidence" which USCIS relied on in making their decision to seek revocation of Mattson's I-130 petition. AR at 99.

USCIS issued a second NOIR in May 2013. AR at 2–3. The second NOIR included a copy of the immigration agent's report detailing his May 2005 conversation with Borisov and the subsequent arrest of Borisov. AR at 4–5. The USCIS did not include Bufalino's written statement. *See id.* Instead, the USCIS repeated that immigration agents contacted Bufalino, who then advised the immigration agents she filed for an annulment and that Borisov married her to acquire citizenship. AR at 3.

Plaintiffs then challenged the second NOIR. AR at 58–85. Plaintiffs reasserted the argument that Borisov married Bufalino in good faith. AR at 59, 62, 84. Plaintiffs argued Borisov agreed the marriage was not bona fide at the time of the May 2005 conversation because the couple were living separately as a result of the marriage deteriorating. AR at 59, 65–66, 84. Plaintiffs also attacked Bufalino's credibility by alleging that Bufalino "was in a very dark place in her life when she made" the statement to the immigration agents and that she possibly was intoxicated when making the statement. AR at 66. Plaintiffs also averred Bufalino never filed for an annulment and the USCIS never charged Borisov with marriage fraud during his removal proceedings in 2005. AR at 59, 66; *see also* AR at 73. Finally, Plaintiffs concluded the USCIS failed to provide evidence to support its finding that Borisov fraudulently married Bufalino. *Id.*

The USCIS revoked Mattson's I-130 petition in June 2013 "based on [Borisov's] previous attempt to enter into a marriage for the purpose of evading the immigration laws." AR

at 53–57. The USCIS cited to INA § 204(c) and summarized the above procedural and factual history. AR at 54–55. Then, the USCIS concluded that it could not grant Mattson's I-130 petition "[d]ue to the fact that [Borisov] previously entered into a sham marriage" based on sufficient and probative evidence. AR at 55, 57.

The USCIS arrived at its conclusion, making several determinations. AR at 56–57. First, the USCIS rejected Plaintiffs' argument that Borisov and Bufalino were not interviewed in January 2005 because forms existed with markings and notes indicating otherwise. AR at 56. Second, the USCIS explained it considered Plaintiffs' submitted photographs and greeting cards but assigned the evidence minimal probative value for two reasons: (1) the signatures were illegible and (2) the evidence was provided for removal proceedings rather than the I-130 petition determination. AR at 56. Third, the USCIS deemed Borisov as incredible based on his claims that he was not interviewed in January 2005, that he had no reason to evade immigration laws despite his student visa being expired, that Bufalino never filed for an annulment, and that he had a difficult time in obtaining a divorce from Bufalino (which only took four months). AR at 56–57. Fourth, the USCIS determined Borisov provided no supporting evidence that Bufalino's father was a border patrol agent who sought to have him deported. AR at 57. As a result, the USCIS chose to accept the immigration agent's word over that of Borisov. *Id.* Finally, the USCIS explained the Declaration of Nathan Sironen was insufficient to outweigh the other evidence. *Id.*

Plaintiffs appealed the USCIS's revocation to the BIA. AR at 37–38, 179. Plaintiffs first argued the January 2005 interview was cut short, depriving Bufalino and Borisov from an opportunity to present evidence of their bona fide marriage. AR at 183–86. Plaintiffs next argued the immigration agent's arrest report failed to establish substantial and probative evidence due to its suspicious and unreliable nature. AR at 186–94. Plaintiffs finally argued they submitted evidence sufficient to refute the allegation that Borisov entered into a fraudulent marriage, which USCIS failed to rebut. AR at 196–200.

The BIA conducted a *de novo* review of Plaintiffs' appeal and then affirmed the USCIS' revocation of Mattson's I-130 petition based on "substantial and probative evidence that the

[Borisov's] marriage to [Bufalino] was fraudulent." AR at 10–13. In making its decision, the BIA first relied on the immigration agent's arrest report of Borisov in 2005. AR at 11. The BIA dismissed Plaintiffs' arguments that the report was hearsay, was a result of a "back-door deal" with the immigration agents, and was made by an unreliable agent.[3] AR at 11.

The BIA next relied on Bufalino's statements to the immigration agents. AR at 11–12. The BIA described the statement as a "handwritten statement from Ms. Bufalino acknowledging that [Borisov] married her to obtain citizenship." AR at 11. It also summarized other content from the written statement, including Bufalino's allegation that Borisov threatened her as well as Bufalino's assertion that she had not seen him since March 2005 or lived with him since 2004. AR at 11–12. These allegations were not included in the first or the second NOIR. *See* AR at 2–3, 6–7. The BIA dismissed Plaintiffs' complaint that Bufalino's statement was not in the record and that it was hearsay. AR at 12.

Third, the BIA discussed Borisov's declaration. AR at 12. The BIA found Borisov's declaration merely speculated as to Bufalino's credibility. *Id.* It then dismissed Borisov's complaint that the USCIS never charged him with marriage fraud during the 2005 removal proceedings. *Id.*

Most importantly, the BIA found Plaintiffs' evidence did not sufficiently establish that Borisov married Bufalino for a purpose other than evading the immigration laws. *Id.* The BIA explained it considered the wedding photos, the greeting cards, and the Declaration of Sironen. *Id.* Because the Sironen declaration failed to testify to a shared relationship or the nature of the marriage, the BIA concluded that the wedding photos and the greeting cards were of little probative value. *Id.*

Finally, the BIA declined to accept additional utility bills and an additional declaration from a previous roommate as evidence. *Id.* However, the BIA stated that additional evidence would not have affected its decision because it was insufficient to establish that Bufalino and Borisov's marriage was bona fide and to overcome the evidence of marriage fraud. AR at 12–13.

---

[3] Plaintiffs argue that the immigration agent was not credible based on an unrelated civil case. AR at 11.

Plaintiffs filed a complaint in this court, seeking review of the BIA's affirmation. ECF Nos. 2, 12. Both parties moved for summary judgment. ECF Nos. 62, 64.

## II. LEGAL STANDARD

Under the APA, a district court must uphold an agency action unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "[T]he standard of review is highly deferential," and "the agency's decision is entitled to a presumption of regularity[.]" *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014). The review is narrow in scope, meaning the district court must not "substitute its judgment for that of the agency." *Judulang v. Holder*, 132 S.Ct. 476, 483 (2011) (internal citations and quotation marks omitted). The district court must instead assess "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (internal citation and quotation marks omitted).

"Agency action is valid if a reasonable basis exists for the agency's decision. A reasonable basis exists where the agency considered the relevant factors and articulated a rational connection between the facts found and the choices made." *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008) (internal citations and punctuation marks removed). The district court "[examines] the reasons for agency decisions—or, as the case may be, the absence of such reasons." *Judulang*, 132 S.Ct. at 484. However, "if the evidence is susceptible of more than one rational interpretation, the court must uphold the agency's findings." *San Luis & Delta-Mendota Water Auth.*, 747 F.3d at 581 (internal citation and punctuation marks removed).

A court may only review a final agency action. *Mamigonian v. Biggs*, 710 F.3d 936, 941–42 (9th Cir. 2013). Agency actions are final when the action marks the end of the agency's decision-making process and determines rights and obligations from which legal consequences will flow. *Id.* at 942.

Finally, a court generally grants summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). But in APA reviews, the court's

review is based on the administrative record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883–84 (1990).

### III. DISCUSSION

The court first addresses violations of the Local Rules. The court next addresses Defendants' argument that Plaintiffs failed to exhaust their remedies, thus failing to preserve certain arguments. The court then turns to the equitable doctrines of estoppel and laches. Finally, the court considers the legality of the BIA's decision.

#### A. Both parties violated the local rules.

The court first admonishes the parties for violating the Local Rules. LR 56–1 governs motions for summary judgment and provides:

> *Motions for summary judgment and responses thereto must include a concise statement setting forth each fact material to the disposition of the motion* that the party claims is or is not genuinely in issue, *citing the particular portions* of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence on which the party relies. *The statement of facts will be counted toward the applicable page limit in LR 7–3.*

LR 56–1 (emphasis added). LR 7–3 governs the page limits for motions for summary judgment and provides:

> Motions for summary judgment and responses to motions for summary judgment are *limited to 30 pages*, excluding exhibits. Replies in support of a motion for summary judgment are *limited to 20 pages*.

LR 7–3(a) (emphasis added).

Plaintiffs and Defendants both violated LR 56–1. First, Plaintiffs entirely failed to include a statement setting forth the factual background of this matter in their motion for summary judgment. *See* ECF No. 64 at 4. Second, Defendants entirely failed to include a statement of the factual background in their response to the motion. *See* ECF No. 68 at 1. The rule clearly commands the inclusion of such a statement in *both* the motion for "summary judgment and the response thereto." Third, even if the court considers Plaintiffs' introduction section in its response to Defendants' motion for summary judgment as the required factual background, Plaintiffs failed to cite to the evidence on which they rely in the Administrative

7

Record. ECF No. 65 at 1–2. Accordingly, the court admonishes Plaintiffs and Defendants for violating LR 56–1.

Plaintiffs also violated LR 7–3(a) by omitting the factual section from their motion in violation of LR 56–1. Based on the length of the motion as it stands, the court believes the motion would have exceeded the thirty-page limit imposed by LR 7–3(a). The court therefore admonishes Plaintiffs for the violation of LR 7–3.[4]

Plaintiffs violated LR 7–3(a) for a second time in their reply. Plaintiffs did so by strategically using numerous footnotes to respond to Defendants' arguments. *See, e.g.,* ECF No. 71 at fn. 1, 7, 9, and 11. Many of Plaintiffs' footnotes contain substantive arguments and continue into excessive lengths. *Id.* Had Plaintiffs included their substantive-footnote arguments with the rest of their substantive arguments, the court is certain the reply would have exceeded the twenty-page limit imposed by LR 7–3. The court therefore admonishes Plaintiffs for violating the Local Rules for the third time.

The court warns both parties that they must follow the directives within the Local Rules and reprimands their failures to do so when submitting the instant motion and the related response. However, the court will consider the motion for summary judgment, the response, and the reply. The court does so to prevent additional delay in a matter that can be decided based on the Administrative Record.

**B. Plaintiffs did not fail to exhaust their claims.**

Plaintiffs assert a due process claim based on Defendants failing to produce Bufalino's written statement. ECF No. 64 at 8–10. Defendants argue that Plaintiffs failed to exhaust their due process claim in the agency proceedings. ECF No. 68 at 3–4.

5 U.S.C. § 704 governs exhaustion requirements under the APA. *Id.*; *Darby v. Cisneros*, 509 U.S. 137, 146–47 (1993). Accordingly, a plaintiff must exhaust his or her administrative remedies only when a statute or agency rule requires so. 5 U.S.C. § 704; *Darby* 509 U.S. at 147.

---

[4] Although Defendants also omitted a factual section from their response, Defendants' response spanned only twenty pages. *See* ECF No. 68. Therefore, the court does not believe that including a factual section would have exceeded the thirty-page limit.

8

When the government denies an I-130 petition, the corresponding regulations do not require a Plaintiff to exhaust their administrative regulations. 8 C.F.R. § 103.3(a)(ii) (stating that a petitioner "may" appeal to the BIA); *compare id. with* 8 U.S.C. § 1252(d)(1) (stating aliens must appeal to the BIA before appealing a removal order). "[W]here Congress has not clearly required exhaustion, sound judicial discretion governs." *Cassirer v. Kingdom of Spain*, 616 F.3d 1019 (9th Cir. 2010).

Defendants cite to *Zara v. Ashcroft*, 383 F.3d 927 for the proposition that "[f]ailure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter." ECF No. 68 at 3 (quoting *Zara*, 383 F.3d at 930). The rule to which Defendants cite refers to the rule imposed by 8 U.S.C. § 1252(d)(1), which is implied in removal proceedings like that of *Zara*. *See Zara*, 383 F.3d 927. *Zara*, in fact, recites the rule by quoting *Vargas v. United States Dept. of Imm. & Nat.*, 831 F.3d 906, 907–08 (9th Cir. 1987). The relevant paragraph in *Vargas* makes clear that the rule applies to deportation and removal orders:

> Absent overriding justification, an alien must exhaust his administrative remedies prior to seeking review of a deportation order. Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter.

*Id.* (internal citations omitted). The instant matter before the court is not a deportation or removal order, rendering *Zara* irrelevant to the issue of exhaustion here.

Instead of a challenge to a deportation or removal order like that in *Zara* and *Vargas*, Plaintiffs challenge the revocation of Mattson's I-130 petition. Accordingly, 8 C.F.R. § 103.3(a)(ii) governs the exhaustion requirements imposed on Plaintiffs in the instant matter. 8 C.F.R. § 103.3(a)(ii)—unlike 8 U.S.C. § 1252(d)(1)—does not require Plaintiffs to exhaust their administrative remedies before filing in this court.

Since 8 C.F.R. § 103.3(a)(ii) does not mandate exhaustion, sound judicial discretion determines this matter. The court finds that, in the interest of judicial economy and efficiency,

the court will decide Plaintiffs' due process claim while deciding the other highly related claims.[5] Defendants' exhaustion argument, therefore, fails. [6]

### C. The equitable doctrines of estoppel and laches do not bar the BIA's decision.

Plaintiffs attempt to prevent the revocation of Mattson's I-130 petition by applying two equitable principles: the doctrine of estoppel and the doctrine of laches. ECF No. 64 at 21–23.

Plaintiffs' equitable estoppel defense fails. "A party asserting equitable estoppel against the government must […] establish (1) the government engaged in affirmative misconduct going beyond mere negligence; (2) the government's wrongful acts will cause a serious injustice; and (3) the public's interest will not suffer undue damage by imposition of estoppel." *Baccei v. United States*, 632 F.3d 1140, 1147 (9th Cir. 2011) (citing *Morgan v. Heckler*, 779 F.3d 544, 545 (9th Cir. 1985)). Accordingly, "[t]he doctrine of equitable estoppel applies against the government only if engages in affirmative misconduct going beyond mere negligence." *Sulit v. Schiltgen*, 213 F.3d 449,454 (9th Cir. 2000). The record is void of any affirmative misconduct on the part of Defendants that exceeds mere negligence. Therefore, the equitable estoppel argument fails.

Plaintiffs' laches argument also fails. "The traditional rule is that the doctrine of laches is not available against the government…. Even if there were some allowance for laches against the government, there is no reason why that doctrine should not be subject to at least the same strictures as estoppel." *U.S. v. Ruby Co.*, 588 F.3d 697, 705 n. 10 (9th Cir. 1978); *see also Perez v. Holder*, 411 F. App'x 34, 36 (9th Cir. 2010) (quoting *Ruby Co.* to dismiss a laches defense).

---

[5] The court also believes Plaintiffs put the BIA on notice of the due process claim by stating, "[Bufalino's] purported statements cannot be used because they have never been provided to the Petitioner. We suspect the only references to her in [the arrest report] have been redacted." AR at 196. Further, "DHS never produced any evidence of [Bufalino's] statements." AR at 1. Even further, "Neither the Beneficiary's A-file nor the documents produced by the DHS in response to Petitioner's May 1, 2013, request for documents contain any record of Bufalino's statements." *Id.* The exhaustion requirement serves to prevent the court's premature interference with agency processes. *See Liu v. Waters*, 55 F.3d 421, 424 (9th Cir. 1995). The BIA declined to address the nondisclosure, stating instead: "The petitioner claims that [Bufalino's] statement is not in the record, and thus, should not be considered. The statement, however, is in the record before us and will be considered." AR at 12. The BIA, therefore, was aware of the potential issue and determined it would consider Bufalino's statement. *See Vizcarra-Ayala v. Mukasey¸* 514 F.3d 870, 873 (9th Cir. 2008) (explaining a petitioner must raise the general argument in administrative proceedings for the purpose of exhaustion rather than the precise argument).

[6] Defendants also contend that Plaintiffs' arguments on the BIA's bias, failure to consider evidence cumulatively, and failure to follow procedures required by law were not preserved under the exhaustion doctrine. The court considers the arguments for the same reasons it considers the due process claim.

Because Plaintiffs fail to establish affirmative misconduct for the equitable estoppel defense, Plaintiffs also fail to establish the requirements for the laches defense. Further, the time span in this case—approximately ten years—cannot justify a laches defense regardless. *See Costello v. United States*, 365 U.S. 265 (1961) (claim brought twenty-seven years after naturalization); *see also Kungys v. United States*, 485 U.S. 759 (1988) (claim brought thirty-four years after naturalization). If the doctrine of laches does not prohibit stripping a person of citizenship after a thirty-four-year delay, the doctrine of laches does not prohibit revoking Mattson's I-130 petition that adjusted Borisov's classification to immediate-relative status after a ten-year delay. The laches defense, therefore, fails.

### D. The BIA did not act arbitrarily or capriciously when affirming the USCIS' decision to revoke Mattson's approved I-130 petition.

Plaintiffs challenge the BIA's affirmation of the USCIS' decision to revoke Mattson's approved I-130 petition. The court begins with a brief background of the statutory scheme, regulations, and corresponding legal standards before addressing the legality of the decision.

A United States citizen may file an I-130 petition on behalf of her alien spouse to request USCIS to adjust the alien spouse's classification to immediate-relative status 8 U.S.C. § 1154(a)(1)(A)(i). Under the statute, the Attorney General must decide "[a]fter an investigation of the facts in each case" whether to approve the petition. 8 U.S.C. § 1154(b). The USCIS, a division of the Department of Homeland Security, completes the investigation on behalf of the Attorney General. 8 C.F.R. § 100.1.

The USCIS' investigation includes identifying fraudulent marriages entered into for the purpose of evading immigration laws. 8 C.F.R. § 103.2; 8 U.S.C. § 1154(c). The USCIS determines whether a marriage is fraudulent under the Immigration and Naturalization Act by determining the couple's intent at the time of the marriage. *See Lutwak v. U.S.*, 344 U.S. 604, 73 (1953). If the USCIS determines a marriage is not bona fide, the I-130 petition must be denied and all future I-130 petitions on behalf of the beneficiary must be denied. 8 U.S.C. § 1154(c); *Vazquez v. Holder*, 602 F.3d 1003, 1014 n. 11 (9th Cir. 2010). However, the USCIS must support a finding of marriage fraud with substantial and probative evidence. 8 C.F.R. §

204.2(a)(1)(ii). Further, the approval of any petition may be revoked at any time for "good and sufficient cause." 8 U.S.C. § 1155. If the USCIS grants the I-130 petition, the alien spouse must file an I-485 application to adjust his status to lawful permanent resident. 8 U.S.C. § 1255.

Plaintiffs appeal the BIA's decision to affirm the revocation of Mattson's I-130 petition on the grounds that the affirmation violated: (1) 8 C.F.R. § 103.2(b)(16); (2) the Due Process Clause; (3) 8 U.S.C. § 1154(c); and (4) the arbitrary and capricious standards set out under the APA by the BIA's treatment of the evidence. The court analyzes each argument in turn.[7]

### 1. *Requirements under 8 C.F.R. § 103.2(b)(16)*

Plaintiffs contend that Defendants violated 8 C.F.R. § 103.2(b)(16) by failing to produce Bufalino's written statement. ECF Nos. 64 at 6–8, 69 at 3–6. Defendants respond that the regulation only required the government to advise Plaintiffs of the derogatory content in the written statement and then provide Plaintiffs an opportunity to rebut the derogatory information. ECF Nos. 65 at 9–10, 68 at 4–12.

A district court deferentially reviews an agency's interpretation of a statute or formal regulation by applying a two-step test. *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1073 (9th Cir. 2016) (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984)). First, the court determines whether the agency's interpretation contravenes clear Congressional intent. *Perez-Guman*, 835 F.3d at 1073. If the court finds clear Congressional intent, the inquiry ends. *Id.* However, if Congress has yet to speak on the particular issue, the court must accept the agency's interpretation if it is based on a permissible construction of the statute. *Id.*; *Chevron*, 467 U.S. at 843.

The parties' dispute centers on formal regulation 8 C.F.R § 103.2(b)(16). The regulation states, in relevant part:

> Inspection of evidence. An applicant or petitioner shall be permitted to inspect the record of proceeding which constitutes the basis for the decision, except as provided in the following paragraphs.
>
> (i) Derogatory information unknown to petitioner or applicant. If the decision will be adverse to the applicant or petitioner and is based on derogatory

---

[7] Based on the court's findings, the court does not reach the parties' arguments regarding harmless error or mandamus.

12

information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered, except as provided in paragraphs (b)(16)(ii), (iii), and (iv) of this section. Any explanation, rebuttal, or information presented by or in behalf of the applicant or petitioner shall be included in the record of proceeding.

(ii) Determination of statutory eligibility. A determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner, except as provided in paragraph (b)(16)(iv) of this section.

8 C.F.R. §§ 103.2(b)(16)(i)–(ii). The language of the regulation is clear: an applicant may generally inspect the administrative record unless the exceptions provided for in the following paragraphs apply. 8 C.F.R. § 103.2(b)(16). The first exception directs that a petitioner must only be "advised" of derogatory information and must be given an "opportunity to rebut" such information. 8 C.F.R. § 103.2(b)(16)(i). The second exception requires only the "disclosure of information"—rather than production of information—used in the USCIS' decision. 8 C.F.R. § 103.2(b)(16)(ii). Black's Law Dictionary defines "disclosure" as "[t]he act or process of making known something that was previously unknown[.]" DISCLOSURE, Black's Law Dictionary, (10th ed. 2014). Accordingly, the regulation does not impose a duty upon the government to produce copies of all the evidence relied on in USCIS' decisions.

But even if the court considered the language of the regulation to be ambiguous, the BIA interprets the regulation to mean that a petitioner must only be advised of the derogatory evidence on record and given an opportunity to rebut such information. *In re: Liedtke*, No. A070 656 080, 2009 WL 5548116, at *2 (BIA Dec. 31, 2009) (declining to interpret the regulation in a manner that would impose a duty of production); *In re: Firmery*, No A75 419 573, 2006 WL 901430, at *2 (BIA Feb. 28, 2006) (confirming the regulation requires "that an alien must only be 'advised'"); *In re: Baguasan Payla*, No. A077 171 491, 2009 WL 3713183, at *1 (BIA Oct. 23, 2009) (requiring a petitioner be aware of the derogatory information).

Further, Ninth Circuit precedent supports the BIA's interpretation. The Ninth Circuit held that 8 C.F.R. § 103.2(b)(16) requires the government to make a petitioner "aware" of derogatory

information and to provide an opportunity to "explain" the derogatory information. *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010) (finding petitioner "failed to raise a colorable constitutional argument" under 8 C.F.R. § 103.2(b)(16)(i) since petitioner was aware of the derogatory information against him, was questioned about the derogatory information, and was given an opportunity to explain the derogatory information).

Here, Defendants satisfied the first requirement under 8 C.F.R. § 103.2(b)(16) by summarizing the primary allegation in Bufalino's written statement: Borisov committed marriage fraud. Defendants advised Plaintiffs of the allegation in both the first and second NOIR by stating that Bufalino advised immigration agents that Borisov married her to acquire citizenship. Defendants also summarized that Bufalino filed for an annulment of the marriage and withdrew her I-130 petition. Plaintiffs were therefore aware of the allegation vital to the BIA's decision.

Plaintiffs argue the regulation does not distinguish between key information and supporting information. ECF No. 71 at 7. However, neither the regulation nor the case law required Defendants to recite Bufalino's statement verbatim either; Defendants must only have advised Plaintiffs' of the derogatory information by sufficiently summarizing the information. It is true that the BIA summarized both the primary and the ancillary allegations in its decision when describing the written statement. However, the court finds that the BIA affirmed the USCIS' decision based the primary allegation: marriage fraud. The BIA did not bar the I-130 petition based on the alleged threats described in the BIA's summary of the written statement. Defendants therefore complied with the duties imposed by 8 C.F.R. § 103.2(b)(16) despite omitting from the NOIR summaries additional ancillary allegations in Bufalino's written statement.[8]

Defendants also satisfied the second requirement under 8 C.F.R. § 103.2(b)(16) by providing Plaintiffs two opportunities to rebut the derogatory allegation. Defendants gave Plaintiffs an opportunity to rebut the allegation by sending two NOIRs. Plaintiffs responded to the first NOIR and rebutted the derogatory allegation by providing Borisov's declaration to the

---

[8] The court, nevertheless, agrees with the Seventh Circuit's advisement in *Ghaly v. I.N.S*: "the better procedure would and should have been for the [government] to produce the statement in question[.]" 48 F.3d 1426, 1435 (7th Cir. 1995). The court urges the government to follow the "better procedure" in the future.

14

USCIS. Plaintiffs again rebutted the allegation in response to the second NOIR. Therefore, Defendants satisfied the requirements of 8 C.F.R. § 103.2(b)(16).

Plaintiffs, however, cite to a contradictory holding in *Ghafoori v. Napolitano*, 713 F. Supp. 2d 871 (N.D. Cal. 2010). In *Ghafoori*, the government denied a petitioner's request that his child be granted asylum after determining that the child was over twenty-one years of age at the time the petition was filed. *Id.* at 874 (explaining the petition required the child be under twenty-one years of age at the time the petitioner applied for asylum). The government used x-rays along with a corresponding opinion from a physician to determine that the child was at least twenty-five years of age at the time the petition was filed. *Id.* While the government provided the physician's written opinion to the petitioner, the government did not provide the x-rays despite using the x-rays as derogatory information against the petitioner in its decision. *Id.* at 875.

After recognizing 8 C.F.R § 103.2(b)(16)(i) did not impose a duty on the government to produce actual evidence of derogatory information to the petitioner, the *Ghaforri* court turned to 8 C.F.R. § 103.2(b)(16)(ii). *See id.* at 880–81. The court held that subsection (ii) "[imposed] the unambiguous requirement that the information be disclosed to the petitioner." *Id.* at 880. The court then held that the government violated subsection (ii) when it failed to provide the x-rays to the petitioner. *Id.* at 881. The holding in *Ghafoori* contradicts binding Ninth Circuit precedent and the BIA's interpretation of the regulation. Accordingly, the court declines to adopt the holding in *Ghafoori* and finds that Defendants satisfied the duties imposed under 8 C.F.R § 103.2(b)(16).

   2. *Due Process Rights*

Plaintiffs next argue that due process rights were violated because, again, Defendants failed to produce Bufalino's written statement. Claims of due process violations are reviewed *de novo*. *Ramirez-Alejandre v. Ashcroft*, 319 F.3d 365, 377 (9th Cir. 2003). When bringing a due process claim, a plaintiff must demonstrate (1) a liberty or property interest protected by the Constitution and (2) a lack of adequate procedural protections. *Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 588 (9th Cir. 1998). "Immediate relative status for an alien spouse is a right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the

15

statutory and regulatory requirements for eligibility. This protected interest is entitled to the protections of due process." *Ching v. Mayorkas*, 725 F.3d 1149, 1156 (9th Cir. 2013). Further, "the question of whether there is a protected interest in a benefit" is not the same as "the question of eligibility for that benefit." *Id.* Courts consider three factors outlined in *Mathews v. Eldrige* when analyzing the adequacy of procedural protections: (1) the private interest affected by the government's action; (2) "the risk of erroneous deprivation" of the affected interest under the procedures used; and (3) the government's interests. 424 U.S. 319 (1976).

Plaintiffs cite to *Ching*, arguing the USCIS violated due process rights by concealing Bufalino's written statement. ECF No. 64 at 8–9. In *Ching*, the government denied an I-130 petition after concluding the alien spouse previously committed marriage fraud. 725 F.3d at 1153. In making its decision, the government relied solely on a six-sentence statement from the beneficiary's ex-spouse despite compelling and substantial rebuttal evidence. *Id.* at 1158–59. After applying the factors set forth in *Mathews*, the *Ching* court held that a petitioner had a due process right to cross-examine the beneficiary's ex-spouse "under the specific circumstances of [the] case." *Id.* at 1159.

However, the *Mathews* factors must be applied on a case-by-case basis. *Id.* at 1157; *see also Alabed v. Crawfordi,* No. 15-16067, 2017 WL 2274973, at *2 (9th Cir. May 24, 2017) (holding "a case-specific analysis of the factors set forth in [*Mathews*] leads to a different result in this case [than in *Ching*] when the government relied on more than a six-sentence statement from an ex-spouse and the petitioner provided less compelling rebuttal evidence). In applying the *Mathews* factors to the specific circumstances of Plaintiffs' case, the court finds Defendants did not violate Mattson's due process rights. Unlike in *Ching*, Defendants proffered substantial evidence to support the conclusion that Borisov committed marriage fraud. Defendants specifically relied on the arrest report detailing Borisov's confession to marriage fraud in addition to the corroborating statement made by Bufalino. Defendants therefore relied on evidence more substantial than a brief, six-sentence statement from an ex-spouse.

Plaintiffs contend that the evidence on which the Defendants relied conflicts; the arrest report details a marriage scheme while Bufalino's written statement insinuates that Borisov

tricked Bufalino into marrying him. ECF No. 64 at 10–11. The court disagrees. The arrest report details Borisov's confession to committing marriage fraud. Bufalino's written statement corroborates that Borisov committed marriage fraud but that Bufalino discovered the marriage fraud at a later time. Borisov could have married Bufalino with the intent to evade immigration laws and acquire citizenship while Bufalino entered the marriage in good faith. Accordingly, the court denies Plaintiffs' argument that the evidence conflicts.

Further, Plaintiffs failed to submit evidence substantial enough to rebut the evidence—specifically, Borisov's confession—that Defendants offered. Plaintiffs failed to provide satisfactory rebuttal evidence despite being advised of Bufalino's allegation and despite being afforded two rebuttal opportunities. Providing Bufalino's letter to Plaintiffs, therefore, would not reduce the risk of erroneous deprivation under the circumstances—Plaintiffs were already aware of the information. Accordingly, Defendants' choice to summarize Bufalino's written statement rather than recite it verbatim or provide it to Plaintiffs did not violate Plaintiffs' due process rights. *See Hassan*, 593 F.3d at 789 (finding plaintiffs' due process claim failed since the beneficiary knew about the derogatory information against him).

### 3. Requirements under 8 U.S.C. § 1154(c)

Plaintiffs next argue that Defendants failed to follow a two-step process analysis when making its marriage-fraud finding as required under 8 U.S.C. § 1154(c), leaving Plaintiffs "unsure" on whether they were rebutting a marriage-fraud conspiracy or marriage fraud by trickery. ECF No. 64 at 12–16.

8 U.S.C. § 1154(c) states:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residency, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

*Id*. The government must first support a conclusion of marriage fraud with "substantial and probative evidence." 8 C.F.R. § 204.2(a)(1)(ii). If the government supports its finding with

substantial and probative evidence, it must then issue a Notice of Intent to Deny ("NOID") the I-130 petition. 8 C.F.R. § 103.2(b)(8)(iv); *see also Zemeka v. Holder*, 989 F. Supp. 2d 122, 130 (D.D.C. 2013). The NOID must inform the petitioner of the derogatory information against him. 8 C.F.R. § 103.2(b)(16)(i). Further, the petitioner must have an opportunity to rebut the derogatory information. *Id.* The burden therefore shifts to the petitioner after the government issues a NOID. *See Zemeka*, 989 F. Supp. 2d at 130. The government then determines whether the I-130 petition should be approved. *Id.*; 8 C.F.R. § 204.2(a)(1)(ii).

Plaintiffs argue the BIA did not conclude that substantial and probative evidence existed to support the marriage-fraud finding prior to the issuance of the NOIRs. ECF No. 64 at 13.[9] The Court disagrees. In its decision, the BIA first stated that substantial and probative evidence of marriage fraud will result in a denial or revocation of a I-130 petition when the BIA summarized the applicable law. AR at 10. The BIA continued to the analysis, stating "we affirm the revocation of the petition because the record contains substantial and probative evidence that the beneficiary's marriage to [Bufalino] was fraudulent." AR at 11. The BIA again concluded that substantial and probative evidence existed when it stated: "[W]e conclude that the record contains substantial and probative evidence that the beneficiary's marriage to [Bufalino] was entered into for the purpose of evading the immigration laws. Section 204(c) of the Act." AR at 13. The conclusion came after the BIA summarized the evidence Defendants relied on when issuing the NOIRs. Therefore, the BIA concluded substantial and probative evidence existed multiple times through its decision.

Further, as explained above, Defendants provided Plaintiffs an opportunity to rebut the substantial and probative evidence of marriage fraud before revoking Mattson's I-130 petition. Despite Plaintiffs' attempt to divide the issue at hand into two theories (a theory of marriage fraud by conspiracy and a theory of marriage fraud by trickery), Plaintiffs needed to rebut only one theory: marriage fraud. The BIA found that Plaintiffs failed to do so based on substantial and

---

[9] Plaintiff also argues the USCIS failed to conclude that substantial and probative evidence existed. ECF No. 64 at 13. However, Plaintiffs challenged the BIA's affirmation of the USCIS' decision to revoke Mattson's I-130 petition. The court will only consider the action challenged by Plaintiffs.

probative evidence. As a result, the court finds Defendants complied with 8 U.S.C. § 1154(c) and the related regulations.

### 4. The BIA's Treatment of the Evidence

Plaintiff asserts that the BIA's treatment of the evidence constituted an arbitrary, capricious decision and an abuse of discretion for three reasons: (1) the BIA failed to consider all the evidence on record in a cumulative manner, (2) the BIA failed to consider the reason for the lack of rebuttal evidence, and (3) the BIA treated the evidence with bias.

The BIA did not fail to cumulatively consider all the evidence on record. Rather, the BIA interpreted the evidence differently than Plaintiffs do in their motion. The BIA described the arrest report, Bufalino's written statement, Borisov's declaration, the wedding photographs, the greeting cards, and the declaration of Sironen. Further, while the BIA stated it would not accept the evidence of the additional utility bills and the declaration of Borisov's previous roommate, the BIA nevertheless concluded that the "two [utility] bills and the [declaration of Borisov's previous roommate] are not sufficient to show either that the marriage between [Borisov and Bufalino] was bona fide, or to overcome the evidence of marriage fraud contained in the record." AR at 12–13. After considering all of the aforementioned evidence, the BIA found that the evidence established Borisov committed marriage fraud. It, therefore, cumulatively considered all the evidence on the record when determining that Plaintiffs' rebuttal evidence did not overcome the marriage-fraud finding. As a result, the court finds the BIA did not act arbitrarily or capriciously when considering the evidence and making its conclusion.

The BIA also did not fail to consider the reason for the lack of rebuttal evidence. Plaintiffs argue the delay in claiming marriage fraud caused Borisov's rebuttal evidence to become unavailable. ECF No. 64 at 20. This argument mirrors Plaintiffs' laches defense, which the court denied above. Therefore, the court denies this argument accordingly.

Finally, Plaintiffs fail to establish bias on behalf of the BIA. Plaintiffs' argument first relies on a finding that the arrest report contradicts Bufalino's written statement. As explained above, the two pieces of evidence do not contradict one another. Plaintiffs next complain that the BIA assigned credibility and weight of the evidence in a biased manner. But under the standard

of the APA, this court affords discretion to the agency's assignments of credibility and evidentiary weight. Here, Plaintiffs fail to show a clear error of judgment in the BIA's decisions. Therefore, the court finds the BIA did not consider the evidence in a biased manner. The court also finds the BIA did not act arbitrarily or capriciously.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (ECF No. 62) is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment (ECF No. 64) is **DENIED**.

IT IS SO ORDERED.

DATED this 13th day of September, 2017.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE